PURITY FOOD COMPANY v.
CONNECTICUT STATE BOARD OF LABOR RELATIONS

SUPERIOR COURT          FAIRFIELD COUNTY          FILE No. 81959

CONNECTICUT STATE BOARD OF LABOR RELATIONS
v. PURITY FOOD COMPANY

SUPERIOR COURT          FAIRFIELD COUNTY          FILE No. 82038

Memorandum filed March 30, 1951.

*Sidney Shapiro*, of Bridgeport, for the Purity Food Company.

*George C. Conway*, Attorney General and *Daniel E. Ryan*, Assistant Attorney General, of Hartford, for the Connecticut State Board of Labor Relations.

SHEA, J.   Purity Food Company, hereinafter called the company, is a copartnership consisting of Irving Shapiro and Samuel Koenig.   It is engaged in the wholesale business of selling and distributing butter, eggs and other provisions, with its place of business in Bridgeport, Connecticut.   Its entire business is carried on within the limits of Fairfield County.

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 145, American Federation of Labor, hereinafter called the union, is a labor organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining and dealing with employers concerning grievances, terms and conditions of employment or other mutual aid and protection.

On October 28, 1947, the company and the union, representing the drivers and floormen employed by the company, entered into a collective bargaining agreement concerning wages, hours and other working conditions affecting the employees of the

company. The agreement was effective as of October 17, 1947, and was to continue in force until October 16, 1949, and thereafter for periods of one year until terminated by either party on thirty days' written notice. The contract also provided that either party could reopen the contract with respect to wages and hours as of October 16, 1948, upon thirty days' written notice to the other party. The company agreed to employ only members of the union in good standing. Provisions were made for filling vacancies with nonunion members in the event the union was unable to furnish members for such vacancies within a specified period of time. However, such nonunion members were required to meet the requirements of the company and of the union within seven days of the date of employment, and the agreement also provided that upon written request of an authorized representative of the union any member who failed to become a member of the union in good standing would be discharged.

On August 11, 1948, in accordance with the terms of the contract, the union notified the company that it desired to reopen the contract with respect to wages and hours, and thereafter submitted its proposals to the company. Shapiro, one of the partners, placed the matter in the hands of the attorney for the company and instructed him to find out what the union wanted. The attorney met with the representatives of the union and offered a raise in hourly rates of pay if the union would exclude certain employees from the bargaining unit. The union rejected the offer.

The company complied substantially with its contract with the union until October, 1948. Since that time the company has failed to carry out its provisions. In January, 1949, Shapiro, acting for the company, encouraged and assisted three of his employees to file a petition with the state board of labor relations requesting it to conduct an investigation and certify a bargaining representative of all of the employees covered by the contract. A hearing was held on this petition on April 1, 1949, when the union contended that the contract was an effective bar to the petition and requested that it be dismissed. The company claimed that the contract was not legal because it was signed by it under duress and coercion. However, the board found that the contract was validly executed and was in full force and effect and that it constituted a bar to the petition, which was thereupon dismissed.

Thereafter the company failed to negotiate with the union, which submitted the controversies concerning the company's violations of the agreement to the state board of mediation and arbitration in accordance with the contract, which provided for such procedure in the event the parties could not amicably adjust controversies arising under it. The company refused to participate in the arbitration proceedings before the board of mediation and arbitration and refused to comply with the board's decision.

On September 8, 1949, the company, through its attorney advised the union that it considered the contract of October 28, 1947, null and void, but stated that, in the event it should subsequently be determined to be valid and enforceable, it was giving the union thirty days' written notice that the contract was to be terminated on October 16, 1949, in accordance with its provisions.

Meanwhile, on January 4, 1950, the union filed with the state board of labor relations charges alleging that the company had engaged in and was engaging in unfair labor practices. On March 27, 1950, the agent of the state board of labor relations issued a complaint against the company which was amended at the hearing held thereon on April 5, 1950. The allegations of the amended complaint are set forth in detail in the amended charges filed by the union. On April 5, 1950, by direction of the board, a consolidated hearing was held upon the employees' petition and the unfair practice complaint. The state board of labor relations found, among other facts, that (1) commencing September 11, 1948, and continuing thereafter until October 16, 1949, the company failed and refused to meet, confer, discuss and negotiate in good faith with the union, although requested to do so by the union; (2) Kish, Varanelli and Cihal were discharged by the company on October 13, 1949, for the reason that they were members of the union and because they were acting in concert for their mutual aid and protection; (3) the company failed and refused to reinstate them for the same reasons; (4) by discharging these three employees and refusing to reinstate them, the company has required its employees as a condition of employment to refrain from forming, joining or assisting a labor organization of their own choosing; and (5) by discharging and refusing to reinstate said three members, the company has interfered with the formation and existence of an employees' organization or association.

Upon the basis of the findings of the state board of labor relations, that board ordered the company, its agents, successors and assigns, to cease and desist from doing certain acts and to take affirmative action in certain other respects in order to effectuate the policy of the act in response to labor relations.

Purity Food Company has appealed upon the ground that the findings of the board as to the facts were not supported by substantial evidence (a) as to the company's alleged refusal to bargain with the union, and (b) as to the company's alleged discriminatory discharge of certain employees. Under this appeal the company also claims that the conclusions of law based on the record of the proceeding and the findings of fact were not justified.

The state board of labor relations in the other case has requested the court to enter an order or decree enforcing the orders of the board issued on May 31, 1950, and requiring the Purity Food Company, its agents, successors and assigns, to comply therewith.

Chapter 370 of the General Statutes, entitled "Labor Relations Act," prohibits certain unfair labor practices which the legislature declared interfere with the rights of employees to self organization and collective bargaining. The act provides that employees shall have the right of self organization, to form, join or assist labor organizations, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from actual interference, restraint, or coercion by employers. (§ 7391). It also defines what shall constitute unfair labor practices for an employer and prescribes the procedure to be followed in determining whether or not unfair labor practices have been committed. It also provides for the election of representatives for the purpose of collective bargaining by the majority of the employees.

Under the act, if the state board of labor relations finds that unfair labor practices have been committed by an employer, that board may petition the Superior Court for the enforcement of its orders. Likewise, persons aggrieved by orders of the board may appeal to the Superior Court requesting it to modify or set aside such orders.

In proceedings before the Superior Court under this act, "the findings of the board as to the facts, if supported by substantial evidence, shall be conclusive."

Purity Food Company has attacked the findings and orders of the board upon the ground that these findings and orders are not based upon substantial evidence. It is, therefore, necessary to determine whether or not there was substantial evidence before the board to support its findings.

"Substantial evidence" means more than a mere scintilla. It is of a substantial and relevant consequence and excludes vague, uncertain and irrelevant matter, implying a quality of proof which induces conviction and makes an impression on reason. It means that one weighing the evidence takes into consideration all of the facts presented to him and all reasonable inferences, deductions and conclusions to be drawn therefrom and, considering them in their entirety and relation to each other, arrives at a fixed conviction. *National Labor Relations Board* v. *Union Pacific Stages, Inc.,* 99 F. 2d 153, 177.

Much of the language employed in our State Labor Relations Act is similar in form to the language of the National Labor Relations Act. In many respects it is identical to the language employed in the New York State Labor Relations Act. The decisions of the federal and New York courts are, therefore, helpful in determining questions arising under our act. Under the decisions of the federal courts, as well as those of the New York courts, the findings of the board as to the facts, if support-ed by evidence, shall be conclusive. The facts are not to be reviewed by the court except to ascertain the presence of sub-stantial evidence. *Associated Press* v. *National Labor Relations Board,* 301 U. S. 103. It is well settled that the courts have no power to pass upon the credibility of witnesses or to substitute their judgment for that of the board on questions of fact. *National Labor Relations Board* v. *Wallace Mfg. Co.,* 95 F. 2d 818, 820. The question is not whether this court would have reached the same conclusion. *Consolidated Edison Co.* v. *Nation-al Labor Relations Board,* 95 F. 2d 390, 397. No matter what the views of the court may be as to the weight of the evidence, it must, nevertheless, accept as final the findings of fact made by the labor relations board if there is substantial evidence to support them. *Matter of Collier Service Corporation* v. *Boland,* 167 Misc. (N. Y.) 709, 711.

Where there is conflict in the testimony produced before the board, where reasonable men might differ as to whether the testimony should be accepted or the testimony of another witness should be rejected, the duty of weighing the evidence

and making the choice rests solely with the board. The courts may not weigh the evidence or reject the choices made by that board when the evidence is conflicting. *Matter of Stork Restaurant, Inc* v. *Boland,* 282 N. Y. 256, 267.

The company has attacked the finding of the board that it refused to bargain in good faith on the reopening of the contract as to wages. There was ample evidence before the board to support this finding. In its recitation of the evidence, the board stated that "Irving Shapiro — — admitted in his testimony that he did not bargain in good faith upon the reopening of the contract and made no counter proposals to the union demand." There was ample evidence before the board to support this finding. See record of hearing of April 1, 1949, pp. 47, 49; see also record of hearing of April 5, 1950, p. 72. Furthermore, the company refused to participate in the arbitration and mediation proceedings when the union submitted the controversy to that board.

The attack made upon the board's finding that Shapiro encouraged and assisted three of his employees to file a petition with the state board of labor relations requesting it to conduct an investigation and certify a bargaining representative of all of the employees covered by the contract is without foundation. Here there was a conflict in the evidence, and the credibility of the witnesses was a matter for the board to determine. It cannot be said that the board found these facts without substantial evidence. See record of hearing of April 1, 1949, pp. 9, 23, 29.

The company claims that the most important part of its appeal concerns the finding of the board that the three members, Kish, Caranelli and Cihal, were discriminatorily discharged. It is clear from the record of the proceedings before the board that Shapiro's version of what occurred on the morning of October 13 was not accepted. According to each of the employees, Shapiro ordered Kish to "get the hell out" several times. When Varanelli and Cihal approached Shapiro about the matter, he also told them, "If that's the way, you go on, get out, I don't want youse." The acceptance of this testimony by the board lends ample support to their finding that these three men were discharged. See record of hearing of April 5, 1950, pp. 26, 41, 42, 49.

There appears to be some doubt as to whether or not the company knew that Varanelli and Cihal were members of the union at the time of their discharge by Shapiro. Actually they

had been members of the union since July 11, 1949. There is no doubt about the fact that Shapiro knew that Kish was a member of the union, for he had deducted union dues from his wages. All three of these men had been .endeavoring for some time to have the company shorten their hours so that they would not be required to work beyond 5:30. Kish and Varanelli had asked Shapiro to change their quitting time about two weeks before he discharged them, and Kish and Cihal had spoken to Shapiro only a week before about the same matter. See record, pp. 22, 48. Kish had spoken to Shapiro on October 12, the day before he was discharged, about going home early. Obviously Shapiro was aware of the fact that these three men were en- gaged in a concerted activity for their mutual aid or protection. In fact, Varanelli and Cihal informed Shapiro that Kish was their spokesman in respect to this discussion of hours and quit- ting time. Thus the finding of the board that the company dis- charged these men and refused to reinstate them for the reason that they were members of the union and because they had acted in concert for their mutual aid and protection cannot be properly attacked.

The company has failed to make any reference to its refusal to reinstate or rehire the discharged employees. The board found that the company refused to re-employ these men when requested to do so on the morning of October 13, 1949. Such a finding was warranted under the evidence. See ·record of hearing of April 5, 1950, p. 79.

The remaining question presented is whether or not the orders passed by the state board of labor relations, upon the basis of its finding, should be enforced. Under our act, if the board determines that the employer has engaged in or is engaging in any unfair labor practice, it shall issue orders requiring the employer to cease and desist from such unfair labor practices and shall take such steps as will effectuate the policies of this act. The orders promulgated by the board are designed to effec- tuate the policies of the act and are legal and proper. They should be enforced.

The appeal of Purity Food Company from the decision and order of the Connecticut state board of labor relations is dis- missed.

Purity Food Company, its agents, successors and assigns are hereby directed to comply with the orders issued to them by the state board of labor relations under date of May 31, 1950.