MASTCO BUS LINES, INC. v.
CONNECTICUT STATE BOARD OF LABOR RELATIONS

SUPERIOR COURT        HARTFORD COUNTY        FILE No. 89613

Memorandum filed August 6, 1951.

*Henry J. Gwiazda,* of New Britain, for the Plaintiff.

*George C. Conway,* Attorney General, and *Daniel E. Ryan,* Assistant Attorney General, of Hartford, for the Defendant.

KING, J.  This is an appeal by the plaintiff-appellant (employer) from a decision of the Connecticut state board of labor relations rendered May 3, 1951, in which the board in effect (1) found that the plaintiff bus company had discharged two of its bus drivers, Enzio Argazzi and Anthony DiPietro, because of union activities on their part, and (2) ordered their reinstatement, upon their request, with compensation for any loss of earnings during their period of separation from employment. Another charge of refusal to bargain collectively with the union was decided in favor of the employer and is consequently not involved in this appeal.

The proceeding was had under the provisions of chapter 370 of the General Statutes, entitled "Labor Relations Act."  A helpful analysis of that act is given in Judge Shea's opinion in *Purity Food Co.* v. *Connecticut State Board of Labor Relations,* 17 Conn. Sup. 199, 203.

The appeal sets up three claims of error on the part of the board, as follows: " (1)  The Decision was not legally warranted by the facts upon which the Board acted as they appear in its records.   (2)  The conclusion of the Board was one which it could not reasonably reach upon the evidence before it and the matters properly to be considered.   (3)  The Board's Order is indefinite and ambiguous in that the Board failed to set a time limit in which the allegedly wrongfully discharged employees are to present themselves for employment to the applicant (plaintiff)."

The statute (General Statutes § 7394 [4])provides that "the board shall not be bound by technical rules of evidence prevailing in the courts."  This was substantially the original form of the National Labor Relations Act (from which our act was taken) before the 1947 amendments. 29 U. S. C. A. § 160 (b); note, 173 A. L. R. 1429, § 38.  General Statutes, § 7395 (2) provides that "No objection that has not been urged before the board shall be considered by the court, unless the failure to urge such objection is excused because of extraordinary circumstances.

The findings of the board as to the facts, if supported by substantial evidence, shall be conclusive." This latter phrase, "substantial evidence," is found in the 1947 amendment to the National Labor Relations Act. 29 U. S. C. A. § 160 (e); note, 173 A. L. R. 1431, § 41.

Our act does not provide any such orderly procedure for correcting subordinate facts from the evidence, or for correcting ultimate facts from the subordinate facts, as do our Workmen's Compensation and Unemployment Compensation Acts. See General Statutes §§ 7450, 7521; Practice Book §§ 256-261. Under § 7395 (4), the board certifies all the evidence en masse, without in any way pointing out portions of the transcript claimed to support the finding of subordinate facts. Consequently, this entire transcript must be examined by the court without the assistance of any precise claims in the actual record as to particular subordinate facts claimed to have been found without "substantial evidence," as to evidence claimed to support such subordinate facts, or as to particular ultimate facts claimed to have been found contrary to the subordinate facts. This in turn encourages very general reasons of appeal such as the first two of the above-quoted three reasons of appeal in this case.

As pointed out in Purity Food Co. v. Connecticut State Board of Labor Relations, supra, 204, the phrase "substantial evidence" has been defined by both state and federal courts. The definition and explanation given in that case probably cannot be improved upon. The phrase is an exotic, patently copied from legislation of the same general type in other jurisdictions. The basic origin of our act was the federal statute commonly known as the "Wagner Act" just as that of our statute limiting the issuance of injunctions in labor disputes (now chapter 372 of the General Statutes) was the federal statute commonly known as the "Norris-LaGuardia Act." Loew's Enterprises, Inc. v. International Alliance of Theatrical Stage Employees, 8 Conn. Sup. 324, 330, 333; S. C., 127 Conn. 415. Each of our acts so closely follows that of the federal statute from which it was respectively derived that the judicial interpretation of both federal statutes and of other state statutes based upon them is of persuasive force and assistance in the interpretation of our respective acts. For convenience in the use of annotations in the United States Code Annotated or in other editions of annotated federal statutes, it has seemed worth while to set forth herein,

in tabular form, the more important sections of our Labor Relations Act with the corresponding sections of the National Labor Relations Act, as follows:—

| General Statutes, chapter 370 | 29 U. S. Code Annotated |
|---|---|
| § 7388 | § 152 |
| § 7389 | § 153 |
| § 7391 | § 157 |
| § 7392 | § 158 |
| § 7393 | § 159 |
| § 7394 | § 160 (a)-(d) |
| § 7395 | § 160 (e)-(1) |
| § 7396 | § 161 |
| § 7399 | § 162 |

Due to the aforementioned failure of our act to provide for any precise system of assignment of errors addressed to the finding, resort must be had to the plaintiff's trial briefs to ascertain, within the scope of the above-quoted three grounds of appeal, what findings of the board the plaintiff-employer claims were not supported by "substantial evidence" or were not supported by the subordinate facts. Parts II, III, V and the second division of Part IV of plaintiff's original trial brief set forth the portions of the board's finding so attacked. It may be added that Part I of the plaintiff's original trial brief is devoted to a general statement concerning the appeal, while the first division of Part IV concerns itself with the question of law raised in the third of the three quoted reasons of appeal.

Plaintiff's original trial brief discloses that the basic attack made upon the finding is centered against that portion determining that Argazzi and DiPietro were each discharged for union activities (paragraphs 3 and 4 of board's finding).

(1) The first complaint (Part II, pp. 4 to 11 of plaintiff's original trial brief) claims that there was no "substantial evidence" that the plaintiff had any inkling of any union activities on the part of either prior to his discharge and, so, could not be found to have discharged him for a cause not then known to it. It is obvious that this claim is logically sound, and if factually correct should prevail. To ascertain its factual correctness, under the system of review provided by our act, it is necessary to examine the entire transcript in search of any "substantial evidence" of the employer's knowledge, prior to the date of discharge, of union activities on the part of either Argazzi (discharged October 6, 1950) or DiPietro (discharged October 27, 1950).

It is true that the transcript discloses that the testimony of the witnesses credited by the board was not free from self-contradiction. However, it also discloses justification for the board's implicit determination that such self-contradiction did not arise from knowingly false testimony. *Craney* v. *Donovan* 92 Conn. 236, 245. The transcript also reveals abundant justification for attaching a low quantum of credit to the testimony of Mrs. Helen J. Muter, who is the president, principal stockholder and active manager of the plaintiff-employer and upon whose testimony it principally relied. The plaintiff correctly claims that the board could not find a fact proven merely by disbelieving Mrs. Muter's denial of it, however low an estimate it might place upon her credibility. *Leitzes* v. *F. L. Caulkins Auto Co.,* 123 Conn. 459, 462. But that was not the situation. There was affirmative evidence from other witnesses of whose credibility the board was properly the final arbiter. *Palladino* v. *Nardi,* 133 Conn. 659, 662. Especially is this so since the board actually saw and heard the witnesses, whereas the reviewing court has only the impersonal written words in the transcript. See *Carroll* v. *Shetucket Realty Co.,* 118 Conn. 715, 716; *Kovacs* v. *Szentes,* 130 Conn. 229, 233.

There was evidence (see, for example, transcript, p. 26) that union activities for the organization of the plaintiff's drivers commenced on or about September 22, 1950. There was also evidence of the witness Kay (transcript, pp. 82 and 83) that Mrs. Muter told him that both Argazzi and DiPietro had been active in union organization (although which was the leader she was not sure) and that because of such activities she had discharged them both. This in itself is "substantial evidence" which supports the finding of the board.

Further evidence in support of the finding (although not essential in this appeal) included that of DiPietro (transcript, p. 19) and also testimony of Theodore Zick, to the effect that while Argazzi was still employed (transcript, p. 79) Mrs. Muter asked him (Zick) if he had joined the union and told him she had heard that the boys were joining the union (transcript, p. 68). This put the plaintiff's knowledge of the union activities of at least some of its bus drivers in advance of both Argazzi's and DiPietro's discharges. How long before she spoke to DiPietro or Zick Mrs. Muter had first obtained this information she alone knew, but on the witness stand she persisted in claiming that the first she knew of any union activities involving plaintiff's employees was when she received exhibit 2 on or

about October 31 and after both Argazzi and DiPietro had been discharged. In determining her credibility, the board was entitled to consider the fact that she gave no reasonable explanation of her action in having DiPietro measured for a new uniform and then the next day discharging him. Her attempted explanations on pages 51 and 52 of the transcript were not convincing and the board was amply entitled to discredit them, as it obviously did. Furthermore, her interest in the case was patent. *DeClement* v. *Administrator,* 16 Conn. Sup. 310, 311. As far as credibility can be determined from the transcript, the board's evaluation of Mrs. Muter's was fully warranted, if indeed it was not the only evaluation which could reasonably have been placed upon it. Ibid.

It is hardly necessary to point out that, even under the common-law safeguards applicable to ordinary court procedure, a trier has the right to believe part of the testimony of a witness and reject the rest. *Leitzes* v. *F. L. Caulkins Auto Co.,* 123 Conn. 459, 461; *Craney* v. *Donovan,* 92 Conn. 236, 245.

The appellant seems to claim (see p. 8 of original trial brief) that the board could not find that Mrs. Muter "in some manner . . . obtained information concerning the organization of her employees shortly after it commenced" unless there was evidence that a particular person, at or before a particular time, told her this fact. Such a claim is without merit, especially where, as here, the finding is supported, as previously pointed out, by Mrs. Muter's own admission. Technically, this so-called "finding" occurs in a portion of the board's opinion entitled "The Evidence." However, the act does not lend itself to procedural precision, and the court is not disposed to reject the plaintiff's claims on purely technical grounds.

(2) In Part III (pages 11 to 16) of its main trial brief, the plaintiff makes the claim that the board could not have found that Argazzi and DiPietro were discharged for union activities since Mrs. Muter testified that they were discharged because of poor work and reasons of economy. The reason for each discharge was a fact involving the state of mind of Mrs. Muter. She alone had absolute knowledge. Kay's testimony (p. 82 of transcript) was that she told him she discharged Argazzi and DiPietro because of union activities. This fully supports the board's finding. As previously pointed out, there was ample reason for disbelieving her claims as to the reasons for the discharge of these men.

(3) In Part V (pages 18 and 19) of its trial brief, the plaintiff complains that the board used as a basis for its decision evidence presented at other hearings at which the appellant was not (and was not notified to be) present. If this were correct it would be a serious matter. However, the references to pages 1, 38 and 39 of the transcript, which the plaintiff cites in support of this stricture, do not indicate that the board did so act, and the decision in nowise so indicates. On page 2 it appears that plaintiff's counsel not only waived the question now sought to be raised but in addition orally admitted paragraph 2 of the board's complaint alleging in effect the existence of the union as a bona fide labor organization. Pages 38 and 39 of the transcript show that any error as to the reception of evidence as to the number of members in the union was corrected by Moorcroft's testimony, which the board obviously credited. Furthermore, any such error could affect only the second charge of refusal to bargain collectively and had no bearing on the discharge of Argazzi and DiPietro for union activities, on which latter charge, only, the board decided against the plaintiff-employer. Clearly, an attempt was being made to unionize the plaintiff's plant. There is no question that the union concerned was a bona fide labor organization. If employees engaged in such an attempt were discharged because of that activity, there would be a violation of the statute regardless of whether they had succeeded up to that time in getting any union members at all. Any other construction would deprive labor of a right guaranteed it under § 7391. The plaintiff's apparent claim here and in Part II of its main trial brief that the organization of the union had to be completed before the plaintiff could have knowledge of union activities on the part of Argazzi or DiPietro is obviously without merit.

(4) Part IV of the plaintiff's trial brief (pages 16 to 18) and the third of the plaintiff's reasons of appeal hereinbefore quoted claim error in paragraph 2 (a) of the board's order in that the two discharged employees were ordered reinstated "upon request" but no time limit was set in which the request must be made. This is really a claim of an error of law as distinguished from a claim of an error in the finding. As such it logically should be taken up after the other claim for correction of the finding, also made in part IV of the plaintiff's original trial brief, has been determined. But the two are so interwoven that, in the absence of provision in the act for any orderly procedure for the correction of the finding, practical

expediency dictates that both claims (as was done in plaintiff's original trial brief) be taken up together.

The second error claimed in Part IV of plaintiff's original trial brief constitutes an attack upon paragraph 2 (b) of the board's decision ordering the plaintiff to make good the respective losses to the two employees up to the time of the offer of re-employment, without, as the plaintiff claims, any evidence that either sustained any loss. If this latter ground of error is raised at all in the grounds of appeal as hereinbefore quoted, it is under one or the other of the first two grounds of appeal. Certainly it is not embraced in the last of the three grounds of appeal. Assuming, without deciding, that this latter ground of error was properly raised and, so, is before the court, it is inefficacious for the reasons hereinafter set forth.

Taking paragraphs 2 (a) and 2 (b) of the order as a whole, it is obvious that a reasonable time in which to seek re-employment might properly have been allowed these men but that, if allowed, it should have been limited to a stated time. The board was in error in failing so to set such a stated reasonable time limit.

However, under the provisions of § 7395 (4), the court may modify or set aside in part an order of the board. Here this should be done, and the decision as so modified affirmed, since only a slight modification need be made and one which does not affect or in anyway invalidate the remainder of the decision of the board. The decision of the board should be modified so as to provide that the rights of Argazzi and DiPietro respectively to request re-employment under paragraph 2 (a) of the order shall be exercised by each of them, if at all, within ten days after the filing in court of this decision on the appeal. This will allow each a reasonable time in which to act after the modification herein made, and at the same time correct the error in the board's original order. See § 7395 (5), (6), and the analogous practice usually followed where there is new legislation reducing the time allowed in a pre-existing statute of limitations as, for example, in General Statutes, Cum. Sup. 1935, § 1683c.

It is true that pages 16 and 29 of the transcript indicate that both Argazzi and DiPietro ultimately succeeded in obtaining other positions which were at least as desirable in every respect (including earnings) as were those which they had had with the plaintiff-employer. It does appear, however, that neither

obtained his present position until about January 1, 1951 (transcript, pp. 16 and 29). Consequently there may have been, and probably was, a loss. Of course if there was no loss, or even if there was and the two employees fail to request re-employment (as they apparently have done to date), the plaintiff, under the terms of the order (which requires no payment until offer of re-employment and no offer of re-employment until after request), will not have to pay them anything and consequently would have no cause for complaint. Furthermore, the board did not undertake to fix the amount, if any, of the loss, and the plaintiff would of course be entitled to a hearing, if necessary, as to such amount. The power of the board to make this order where, as here, it has reasonably found that so to do is "necessary to effectuate the policies of the Act" has in effect been settled in *Phelps Dodge Corporation* v. *National Relations Board*, 313 U. S. 177, 189, 85 L. Ed 1271. In our act such an order is specifically authorized in § 7394 (5) (c).

(5) In its reply brief, the plaintiff-employer makes much of a claim not touched upon in its original trial brief, to the effect that there was no evidence of a refusal to reinstate. No such claim is mentioned in any one of the three quoted grounds of appeal. Again assuming, without deciding, that any such ground of appeal is properly before the court, it is technically true that there is no evidence that either Argazzi or DiPietro requested reinstatement prior to the hearing, and, consequently, that there is no direct evidence of a refusal to reinstate. However, the transcript makes it clear that no such request, had it been made, would have been granted. Indeed, the transcript shows that the plaintiff's claim before the board was that both men were discharged for poor work, with some additional claim of economic reasons. Mrs. Muter did not claim that this discharge was, even in her own mind, a *temporary* layoff made for disciplinary or economic reasons, although she had abundant opportunity so to do. Each discharge was permanent and unequivocal, and the victims were not required to implore her to change her mind. Furthermore, the board was fully justified in finding that such action, had it been taken, would have been futile. *Leclerc* v. *Administrator*, 137 Conn. 438, 442.

Even if it were determined that the board's finding of a refusal to reinstate was not supported by "substantial evidence," striking it out would not advance the plaintiff's position, since the fact remains that these two employees were discharged for

union activities, which itself is an unfair labor practice in violation of § 7392 (4), (5) and (10), quite apart from any subsequent refusal to reinstate them. This would nonetheless be so even had there been evidence (and there was none) that, either with or without request, they would have been reinstated at some unknown later date at the whim of the plaintiff-employer. The finding of a refusal to reinstate is wholly unnecessary to the validity and propriety of the board's actual decision. Furthermore, reinstatement upon request is what the board orders the plaintiff to do, and if it truly has been willing so to do it has little, if any, cause to complain of this portion of the order.

Judgment may enter modifying paragraph 2 (a) of the decision by inserting after the words "upon request" the words "made within ten days after the filing of the decision of the Superior Court on the appeal," and, as so modified, affirming the decision, including the order, the findings of fact and the conclusions of law, in toto.