TOWN OF NEW CANAAN *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS

ALCORN, C. J., HOUSE, COTTER, THIM and RYAN, Js.

Argued October 9, 1970—decided January 20, 1971

*Dwight F. Fanton,* with whom, on the brief, was *James B. Stewart,* for the appellant (plaintiff).

*Alphonse C. Jachimczyk,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (defendant).

Ryan, J. This is an appeal from a judgment of the Superior Court dismissing an appeal by the town of New Canaan from a decision of the Connecticut State Labor Relations Board, hereinafter referred to as the board. On March 17, 1966, Local 1303 of Council No. 4, American Federation of State, County and Municipal Employees, A.F.L.–C.I.O., hereinafter referred to as the union, was certified by the defendant board as the exclusive bargaining representative for some thirty-three employees of the highway, incinerator, parks and sewer departments of the town of New Canaan. Between May 18, 1966, and May 17, 1967, there were eighteen bargaining sessions and a number of telephone conversations between representatives of the town and the union for the purpose of agreeing on a contract of employment. Thereafter the union petitioned the board to initiate fact finding pursuant to § 7-473 of the General Statutes. By agreement of the parties the following four issues were submitted to the fact finder designated by the board: arbitration, picketing, payroll deduction of union dues and a "prior practices" clause. The fact finder made recommendations on each of the four issues in a report dated August 31, 1967. Three of the four issues were decided favorably to the position of the town. There were two more meetings after this date. At the first meeting, held on November 15, 1967, negotiations ended after consideration of only two of the four recommendations of the fact finder when the union representative left the meeting as a result of disagreement concerning the language of a picketing clause proposed by the town. At the second meeting held on January 3, 1968, the parties were unable to agree on the effective date of the contract. The town insisted that no contract could become effective before September 1, 1968, the beginning of

the next fiscal year for the town, while the union insisted on a contract effective immediately for the remaining eight months of the fiscal year. The meeting ended with both parties adamantly asserting their positions. On January 5, 1968, the union filed a complaint with the board alleging that the plaintiff was engaging in prohibited practices in violation of §§ 7-470 (a) (1) and (a) (4) of the General Statutes. The board held hearings on March 20, 1968, and on March 25, 1968. On October 16, 1968, the board issued its decision and ordered the town and its agents to cease and desist from refusing to bargain collectively in good faith with the union, and directed the town, inter alia, upon request, to bargain, in good faith with the union. The trial court dismissed the plaintiff's petition appealing from the order of the board and from this judgment the plaintiff has appealed to this court.

The plaintiff makes three basic claims of error. First, the finding of the board that the parties reached agreement on all substantive terms and conditions of employment is not based on substantial evidence. Second, the board's conclusion of law that on and since January 3, 1968, the town has refused to bargain collectively in good faith with the union is not supported by the evidence. Third, the board demonstrated obvious bias against the plaintiff.

Taking first the finding of the board that the parties reached agreement on all substantive terms and conditions of employment, we find that there was considerable conflict of evidence on this point. Where there is a conflict of evidence, the board is entitled to accept that which it considers the more credible. The findings of fact by the board cannot be disturbed unless they are not supported by substantial evidence. General Statutes § 31-109 (b). On an

appeal the Superior Court can do nothing more on the factual questions than to examine the record to determine whether the ultimate findings of the board were supported, as the statute requires, by substantial evidence. If it is determined that they were, the findings cannot be disturbed. *Bisogno* v. *Connecticut State Board of Labor Relations,* 150 Conn. 597, 602, 192 A.2d 550. "Substantial evidence is evidence that carries conviction. *Matter of Di Nardo* v. *Monaghan,* 282 App. Div. 5, 7, 121 N.Y.S.2d 119. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126. It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. *Purity Food Co.* v. *Connecticut State Board of Labor Relations,* 17 Conn. Sup. 199, 204; *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S. Ct. 501, 83 L. Ed. 660; *McCague* v. *New York, C. & St. L.R. Co.,* 225 Ind. 83, 89, 71 N.E.2d 569; *Pennsylvania State Board* v. *Schireson,* 360 Pa. 129, 133, 61 A.2d 343." *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 461, 115 A.2d 439.

The question before the trial court was whether there was substantial evidence to warrant its ultimate finding of fact that on "January 3, 1968, the parties reached agreement on all substantive terms and conditions of employment." From the evidence submitted by the parties the board reasonably could have found the following facts. After the parties had negotiated for a period of one year and were unable to reach an agreement, the union requested the services of a fact finder and the town agreed. When

the dispute between the union and the plaintiff was submitted to fact finding, the fact finder requested the parties to submit in writing their respective claims concerning the disputed issues. The union set forth two issues. The town, on July 27, 1967, in a six-page brief listed four issues as unresolved. At the hearing held on August 28, 1967, both parties agreed to accept the four points listed in the town's brief (two of which were submitted by the union) as the four issues then in fact finding. The fact finder in his report made recommendations on each of the four issues. The union was reluctant to accept some of the recommendations but at the final meeting on January 3, 1968, it agreed to do so and indicated its willingness and desire to close the negotiations by signing a contract. A discussion concerning the effective date of the agreement ensued. The union stated that it would accept the town's language on picketing, dues deductions, and prior practices "for the period extending from the present moment to August 31, 1968." August 31 is the end of the fiscal year in the town of New Canaan. The town took the position that this would be an interim contract which would not make sense because "immediately as of February 1st we would be bargaining for the new contract to go into effect September 1st." The town insisted that it would sign no contract to be effective prior to September 1, 1968, and the union filed charges of prohibited practices two days later.

At the hearing before the board, the town offered evidence that no agreement was reached on a number of issues. The chief negotiator for the town was asked at the conclusion of his testimony before the board: "Do you believe at this moment . . . that there is anything now of substance that is in disagreement between you and the Union as to the

substance of a collective agreement to be effective presently?" Answer: "I would hope not." When he was asked if he knew of any reason why there would be an obstacle his answer was "No."

At the hearing before the board the plaintiff's claims of unresolved issues were dissipated on examination. While it is true that the language of the proposed contract had not been formalized by a written document, there is nothing in the record to indicate that this could not promptly have been done in a manner satisfactory to the parties. The finding of the board that on January 3, 1968, the parties reached agreement on all substantive terms and conditions of employment (not including, of course, the effective date and duration of the contract) was based on substantial evidence and the conclusion of the trial court cannot be disturbed.

Was the town's refusal to enter into any contract to be effective prior to September 1, 1968, a refusal to bargain collectively and in good faith as required by the Municipal Employee Relations Act, §§ 7-470 (a) (1) and (a) (4)? Both the Municipal Employee Relations Act and the Connecticut Labor Relations Act are closely patterned after the National Labor Relations Act. Sections 7-470 (a) (1) and (a) (4) follow almost verbatim the federal act; 29 U.S.C. §§ 158 (a) (1) and (a) (5); and "[f]or this reason, the judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own act." *Windsor* v. *Windsor Police Department Employees Assn., Inc.,* 154 Conn. 530, 536, 227 A.2d 65; *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 460, 115 A.2d 439.

The obligation to bargain in good faith does not require the yielding of fairly maintained positions.

*H. K. Porter Co.* v. *National Labor Relations Board,* 397 U.S. 99, 106, 90 S. Ct. 821, 25 L. Ed. 2d 146; *National Labor Relations Board* v. *American National Ins. Co.,* 343 U.S. 395, 404, 72 S. Ct. 824, 96 L. Ed. 1027; *Majure* v. *National Labor Relations Board,* 198 F.2d 735, 739 (5th Cir.). Section 7-470 (c) of the General Statutes in explaining what is meant by "to bargain collectively" provides that "such obligation shall not compel either party to agree to a proposal or require the making of a concession." Duration of a contract is a mandatory bargaining subject; *National Labor Relations Board* v. *Yutana Barge Lines, Inc.,* 315 F.2d 524, 528 (9th Cir.); *U. S. Pipe & Foundry Co.* v. *National Labor Relations Board,* 298 F.2d 873, 878 (5th Cir.); and where the subject of a dispute is a mandatory bargaining point adamant insistence on a bargaining position is not necessarily a refusal to bargain in good faith. *National Labor Relations Board* v. *Borg-Warner Corporation,* 356 U.S. 342, 349, 78 S. Ct. 718, 2 L. Ed. 2d 823; 48 Am. Jur. 2d, Labor and Labor Relations, § 700.

While the town was entitled to maintain its position on the duration of the contract, it must have done so in good faith and not for the purpose of frustrating the bargaining process or making it futile. *United Steel Workers of America* v. *National Labor Relations Board,* 389 F.2d 295, 299 (D.C. Cir.); *National Labor Relations Board* v. *Herman Sausage Co.,* 275 F.2d 229, 232 (5th Cir.). "No inference of bad faith can be rested upon an employer's insistence upon particular substantive provisions unless those provisions concern trivial matters or are obviously intolerable." *National Labor Relations Board* v. *Yutana Barge Lines, Inc.,* supra, 528.

To determine the question of good faith the totality

of the town's conduct throughout the negotiations must be considered. *National Labor Relations Board v. Alva Allen Industries, Inc.,* 369 F.2d 310, 321 (8th Cir.). The town urges that January 3, 1968, was the first time that the effective date of the contract was discussed by the parties and that it was obliged to consider the budget-making process of the town and its fiscal year which ended August 31, 1968. Section 7-470 (c) of the General Statutes provides that bargaining sessions between the municipal employer and the employees shall take place at reasonable times "including meetings appropriately related to the budget-making process." The negotiations had extended from May 18, 1966, to January 3, 1968, a period of nineteen and one-half months.

There was evidence before the board that as of January 3, 1968, everything other than dues checkoff and the effective date of the contract was already implemented by the town. The town was already paying the wages, including time and one-half for overtime, and had instituted the better form of hospitalization. If the contract had been put into effect on that date there would have been no change in wages, vacations, holidays or any other change in the substance of the terms or the conditions of employment which were already in effect. The parties were in agreement as to the grievance procedure, picketing and dues checkoff as recommended by the fact finder. The signing of a contract in January, 1968, would not have changed wages or provided for the payment of back pay or any accrued benefits to the employees or any other costs to the town.

The position of the town was that it would enter into no contract effective prior to September 1, 1968, and it did not change its position on this matter. At the hearing it was apparent that the town was still

insisting that there would be no interim contract and that it was still proposing, as it did on January 3, 1968, to commence negotiations anew for the next fiscal year, thus rendering fruitless all areas of agreement theretofore reached. The town had ample time prior to the hearing to amend its position but failed to do so. The trial court was correct in sustaining the board's conclusion of law that such conduct constituted a refusal to bargain collectively in good faith with the union, in violation of §§ 7-470 (a) (1) and (a) (4). While the board does not have power to compel either party directly or indirectly to agree to any substantive contractual position of a collective bargaining agreement, it does have power under the statute to require employers to negotiate in good faith, as it did in the instant case. *H. K. Porter Co.* v. *National Labor Relations Board,* supra, 108.

The claim of the plaintiff that the board demonstrated obvious bias against the plaintiff cannot be sustained. While a member of the board took a very active part in the questioning of witnesses at the hearing and we recognize that activity approaching advocacy should be avoided, we are not convinced that there was an abuse of the board's discretion in this case.

There is no error.

In this opinion the other judges concurred.