TOWN OF WINCHESTER *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS

COTTER, LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued February 16—decision released July 11, 1978

*Russell L. Post, Jr.,* with whom was *O. Bradford Griffin, Jr.,* for the appellant (plaintiff).

*William R. Darcy,* general counsel, for the appellee (defendant).

ARTHUR H. HEALEY, J. This is an appeal from a judgment of the Superior Court dismissing an appeal by the town of Winchester from a decision of the Connecticut state board of labor relations.

This case was initiated as a result of charges filed by the National Association of Municipal Employees, a division of local 208 of the National Association of Government Employees, hereinafter the union, alleging that the town, having recognized the union as the collective bargaining representative of Armand Sartirana, the town's only paid fireman, violated state law by refusing to bargain with the union and by eliminating Sartirana's position. Sartirana is the sole member of the bargaining unit involved in this case.

The town has filed twenty numbered assignments of error, many of which are interrelated. Substantively, these assignments come down to three basic claims which are advanced as constituting reversible error. They are: (1) that one employee cannot constitute an appropriate unit, either logically or under applicable guiding decisions, (2) that the town did not violate the law when its town manager withdrew from negotiations with reference to Sartirana, the fire department employee involved, because under the charter the fire department was not under the

town manager's supervision and (3) that the town did not violate the Municipal Employee Relations Act (MERA) by eliminating the one paid position in the otherwise all volunteer fire department after the union sought to bargain on behalf of Sartirana, the incumbent in that position.

We first take up that claim that involves the question of whether a single employee unit is an appropriate unit. This assignment is essentially that the town has no obligation under the law to bargain with the union if there is only one employee in the "bargaining unit," since bargaining cannot be collective where there is only one employee. The town specifically asserts that the Superior Court erred in holding that "[w]hile federal courts have consistently held that bargaining with a one-man unit is improper, under the Municipal Employee Relations Act, §§ 7-467 to 7-477, inclusive, of the General Statutes, a one-man unit is an appropriate unit for collective bargaining." It is the town's position that one employee cannot constitute an appropriate bargaining unit, "either logically or under applicable guiding decisions."

The findings of the board disclose the following facts which are necessary for us to set out to discuss and decide this assignment of error: The town is a "municipal employer" within the meaning of the Municipal Employee Relations Act, General Statutes §§ 7-467–7-477. The union is an "employee organization" within the meaning of the MERA. The town has a fire department manned largely by volunteers, some 130 in number, headed by a chief and deputy chiefs. Under the town charter the town manager is directly in charge of most departments, but the board of selectmen is in charge of the admin-

istration of the fire department. For over twenty-five years prior to 1975 there had been a paid day-time driver who responded to all still alarms and some others, and who had other duties including custodial duties. This paid driver was appointed by the selectmen upon recommendation by the chief and his deputies. In 1971 the incumbent paid driver contemplated retirement and at that time Sartirana was and had been a volunteer fireman for a number of years. Sartirana asked the chief and others to recommend him for the job. They did so and the selectmen appointed Sartirana to the job at an annual salary of $7400, which was paid by the town. In 1975 his salary was $10,117. Early in 1974 Sartirana joined the union. On May 18, 1974, the union filed a representation petition with the defendant board. The negotiations between Dennis Moore, the town manager, and the union began in February, 1975. The board agent held an informal conference with Moore and a representative of the union. As a result of this conference, Moore signed an agreement recognizing the union and agreeing to negotiate with it for a unit consisting only of Sartirana, the paid driver. On June 27, 1975, counsel for the town issued his opinion concerning the town manager's authority to recognize the union as bargaining representative for Sartirana. His opinion was that the town manager could not, on his own authority, bind the town in any agreement affecting the fire department and that, therefore, the "Recognition Agreement" was not an agreement binding on the town. The town manager forthwith terminated negotiations with the union.

Thereafter, the selectmen voted to eliminate the paid driver's position which was held by Sartirana. This action of the selectmen was preceded by cer-

tain events referred to by the board, which need not be set out here on this assignment of error but which will be referred to below. An appeal was taken from this action to the defendant board which ordered the town to reinstate the position of paid driver, to reinstate Sartirana to that position, to reimburse him for his losses and to resume negotiations with the union.

We must determine whether one employee constitutes an "appropriate" bargaining unit under the Connecticut Municipal Employee Relations Act.[1] The town claims that we should reverse the trial court and hold that such a bargaining unit is not permitted, and it points to federal law which, it argues, requires that result. On the other hand, the board, while recognizing the state of the federal law, argues that such a bargaining unit is "appropriate" and states that federal precedent should not be followed here. The facts relating to this assignment of error are not in issue. The Superior Court held that "under the Municipal Employee Relations Act, §§ 7-467 to 7-477, inclusive, of the General Statutes, a one-man unit is an appropriate unit for collective bargaining." It is this conclusion of law we are to review. While the conclusion reached by the trial court is to be tested by the finding it cannot stand if it is legally or logically inconsistent with the facts found or if it involves some erroneous rule of law applicable to the case. *Belford* v. *New Haven,* 170 Conn. 46, 55, 364 A.2d 194; *Sea Beach Assn., Inc.* v. *Water Resources Commission,* 164 Conn. 90, 93, 318 A.2d 115.

---

[1] The board claims that the town has waived its right "to raise this objection on appeal." This is not so. The court below found that the town made that claim of law, and it ruled against the town on that claim. Furthermore, the town raised this claim before the board.

"The Connecticut Municipal Employee Relations Act, like the Connecticut Labor Relations Act originally enacted in 1945, is closely patterned after the National Labor Relations Act, as amended, which a comparison of the two acts clearly demonstrates." *Windsor* v. *Windsor Police Department Employees Assn., Inc.,* 154 Conn. 530, 536, 227 A.2d 65. This court has stated that it is for this reason that "the judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own act." *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 460, 115 A.2d 439; *Windsor* v. *Windsor Police Department Employees Assn., Inc.,* supra. In speaking of the similarity of language that exists between the National Labor Relations Act (NLRA); 29 U.S.C. §§ 151–161; the Connecticut State Labor Relations Act and the MERA, we have often noted that the language of these three is essentially the same: "[T]he judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own acts." *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 579, 295 A.2d 526, and cases cited.

Turning to the relevant portion of the NLRA and the MERA, we find language that is essentially the same. This is apparent from an examination of 29 U.S.C. § 157[2] and General Statutes § 7-468[3] which

[2] "[Title 29, U.S. Code] § 157. RIGHT OF EMPLOYEES AS TO ORGANIZATION, COLLECTIVE BARGAINING, ETC. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."

[3] "[General Statutes] Sec. 7-468. RIGHTS OF EMPLOYEES AND REPRESENTATIVES. (a) Employees shall have, and shall be protected in

are concerned with the right of employees to organize and bargain collectively. Language which is essentially the same is also disclosed from an examination of 29 U.S.C. § 159[4] and General Statutes § 7-471[5] where those sections set out the power of the respective boards to decide the unit "appropriate" for the purposes of collective bargaining. "Legislative intent is found not in what the legislature meant to say but in the meaning of what it did say." *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 221, 348 A.2d 560; *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 482, 226 A.2d 506. No word in a statute should be treated as superfluous. *Levin-Townsend Computer Corporation* v. *Hartford,* 166 Conn. 405, 409, 349 A.2d 853. "[N]o part of a legislative enactment is to be

---

the exercise of, the right of self-organization, to form, join or assist any employee organization, to bargain collectively through representatives of their own choosing on questions of wages, hours and other conditions of employment and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from actual interference, restraint or coercion. . . ."

[4] "[Title 29, U.S. Code] § 159. REPRESENTATIVES AND ELECTIONS— EXCLUSIVE REPRESENTATIVES; EMPLOYEES' ADJUSTMENT OF GRIEVANCES DIRECTLY WITH EMPLOYER . . . DETERMINATION OF BARGAINING UNIT BY BOARD (b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . ."

[5] "[General Statutes] Sec. 7-471. POWERS OF STATE BOARD OF LABOR RELATIONS. The state board of labor relations shall have the following power and authority in relation to collective bargaining in municipal employment: . . . (3) The board shall decide in each case whether, in order to insure to employees the fullest freedom in exercising the rights guaranteed by sections 7-467 to 7-477, inclusive, and in order to insure a clear and identifiable community of interest among employees concerned, the unit appropriate for purposes of collective bargaining shall be the municipal employer unit or any other unit thereof . . . ."

treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 109, 214 A.2d 354. "In construing a statute a court considers its legislative history, language, purpose and the circumstances surrounding its enactment. *Delinks* v. *McGowan,* 148 Conn. 614, 618, 173 A.2d 488; *Cassidy* v. *Tait,* 140 Conn. 156, 160, 98 A.2d 808." *State* v. *Sober,* 166 Conn. 81, 91n, 347 A.2d 61. In the federal sector it has been said that the purpose of the NLRA is to seek the peaceful adjustment of labor-management disputes as a substitute for industrial strife and the promotion of industrial stabilization through the collective bargaining agreement. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S. Ct. 1347, 4 L. Ed. 2d 1409. This is also the essential thrust of our State Labor Relations Act and the MERA.

The federal act has consistently been interpreted by the national labor relations board (NLRB) as refusing recognition of a unit of one person as an "appropriate" unit for collective bargaining. See, e.g., *In re Pacific Car and Foundry Co.,* 73 N.L.R.B., No. 35, 19 L.R.R.M. 1328; *In re International Salt Co., Inc.,* 74 N.L.R.B., No. 204, 20 L.R.R.M. 1258; *In re Luckenbach Steamship Co.,* 2 N.L.R.B. 181, 193, 1 L.R.R.M. 91; *National Container Corporation of Wisconsin,* 99 N.L.R.B., No. 172, 30 L.R.R.M. 1207. The NLRB cases also point out in so holding that the principle of collective bargaining requires as a logical condition that there be more than one eligible person desiring to bargain. See, e.g., *In re International Salt Co., Inc.,* supra.

Federal courts have taken a similar position. One court has said that "[i]t is fundamental that 'the principle of collective bargaining presupposes that there is more than one eligible person who desires to bargain. The Act therefore does not empower the Board to certify where only one employee is involved.'" *National Labor Relations Board* v. *WGOK, Inc.,* 384 F.2d 500, 503 (5th Cir.). "An employer may voluntarily bargain with respect to one employee, but a one-man unit is not a certifiable bargaining unit." *National Labor Relations Board* v. *Transamerican Freight Lines, Inc.,* 275 F.2d 311, 314 (7th Cir.). One circuit has pointed out that "[t]he parties appear to be in agreement that a unit which consists of a single person is not an appropriate bargaining unit. See *National Labor Relations Board* v. *Transamerican Freight Lines,* . . . [Inc., 275 F.2d 311, 314 (7th Cir.)]; *Westinghouse Electric Corporation,* . . . [179 N.L.R.B., No. 49, 72 L.R.R.M. 1316]." *National Labor Relations Board* v. *Crispo Cake Cone Co.,* 464 F.2d 233, 234 (8th Cir.). In *Westinghouse Electric Corporation,* supra, the board had occasion to consider a complaint alleging an unlawful refusal to bargain where the charging union was certified for a unit containing two truck drivers, one of which had voluntarily terminated his employment. In dismissing the complaint the board said: "The Board, having duly considered the matter, has determined that it would not effectuate the policies of the Act to proceed further in this matter, inasmuch as the Board will not require an employer to bargain in a unit consisting of only one employee."

This court has not been given nor can it find any federal cases that are contrary to the NLRB's position. It is important to point out that, while

the town urges the applicability of federal law, there is no claim before us that federal jurisdiction has preempted state jurisdiction in this area. The judicial interpretation accorded the federal act is, as we have earlier noted, of great assistance and persuasive force in the interpretation of our own acts because our statutes dealing with labor relations are closely patterned after the NLRA and because the language of the three acts is essentially the same. See, e.g., *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 295 A.2d 526. We are not given any valid reason why, in construing the MERA, we should change this position.

The board argues that one employee is not expressly or impliedly excluded from collective bargaining by the MERA. The same can be said of the federal act and yet that act has been interpreted consistently, without judicial reversal, as set out above. The board has the power under General Statutes § 7-471 (3) to decide the unit "appropriate" for the purpose of collective bargaining. This section of the statute empowers the board to do so, "in order to insure to employees the fullest freedom in exercising the rights guaranteed by sections 7-467 to 7-477, inclusive, and in order to insure a clear and identifiable *community of interest among employees* concerned." (Emphasis added.) These words do not appear in the NLRA section giving the national labor relations board the power to designate the "appropriate" unit for collective bargaining. In this section of the MERA, which is the affirmative grant of power to the board to designate such a unit, it is indeed significant that the language used not only is pluralistic in tenor but is literally pluralistic. The words and phrases involved here are to be

construed "according to the commonly approved usage of the language." General Statutes § 1-1 (a). The noun "community" has, among its meanings, "a body of individuals organized into a unit"; "common or joint . . . experience, or pertinence." Webster, Third New International Dictionary. The preposition "among" indisputably has a "more than one" meaning. The word "employees" which follows "among" in § 7-471 (3) was meant to mean what it plainly states, more than one employee, and this is especially so in this context. There can be no "community of interest" where there is only a single employee. In examining the MERA, it is evident that the prepositions "between" and "among" were both used. Because of the usage of both of these prepositions, the legislature can be presumed to have had the common meaning of each in mind and thus to have intended to be selective in their use. In interpreting the meaning of a statute, we attempt to determine the intent of the legislature as expressed by the common and approved usage of the words in the statute. General Statutes § 1-1 (a); *Waterbury Teachers Assn. v. Furlong,* 162 Conn. 390, 406, 294 A.2d 546; *Hartford Electric Light Co. v. Water Resources Commission,* 162 Conn. 89, 100, 291 A.2d 721. General Statutes § 1-1 (f) provides that "[w]ords importing the singular number may extend and be applied to several persons or things and words importing the plural may include the singular." This statute cannot logically be invoked here to make the word "employees" singular, as it appears after the words "to insure a clear and identifiable community of interest among . . ." in § 7-471 (3). "Courts cannot, by the process of construction, abrogate a clear expression of legislative intent." *Buxton v. Ullman,*

147 Conn. 48, 57, 156 A.2d 508, appeal dismissed, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989. To ignore the plain meaning of words contained in a statute does not comport with tenets of basic statutory construction. *Thibeault* v. *White,* 168 Conn. 112, 115, 358 A.2d 358.

The trial court examined General Statutes § 7-471 (1)[6] which sets out the powers of the board when, in accordance with prescribed regulations of the board, a petition has been filed. That section provides that a petition may be filed "by an employee or group of employees or any employee organization acting in their behalf alleging that *a substantial number of employees"* wish to be represented as permitted in that section. (Emphasis added.) The trial court held that the word "employees" there was not to be construed as plural, and

---

[6] "[General Statutes] Sec. 7-471. POWERS OF STATE BOARD OF LABOR RELATIONS. The state board of labor relations shall have the following power and authority in relation to collective bargaining in municipal employment: (1) Whenever, in accordance with such regulations as may be prescribed by the board, a petition has been filed (A) by an employee or group of employees or any employee organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining by an employee organization as exclusive representative, or (ii) assert that the employee organization which has been certified or is currently being recognized by their municipal employer as the bargaining representative is no longer the representative of a majority of employees in the unit; or (B) by a municipal employer alleging that one or more employee organizations have presented to him a claim to be recognized as the representative of a majority of employees in an appropriate unit, the board shall investigate such petition and, if it has reasonable cause to believe that a question of representation exists, shall provide for an appropriate hearing upon due notice. If, after hearing, the board finds that there is a controversy concerning the representation of employees, it shall direct an election by secret ballot or shall use any other suitable method to determine whether and by which employee organization the employees desire to be represented and shall certify the results thereof. . . ."

in doing so cited the common statutory construction rule of § 1-1 (f) that "the plural number may include the singular." That statute uses the word "may" and here it is clearly directory and not mandatory. Therefore, the legal principle set forth in § 1-1 (f) cannot be said to "require" that singular and plural forms have interchangeable effects, and "discrete applications" of this principle are favored except where a contrary intent or reasonable understanding is indicated. 2A Sutherland, Statutory Construction (4th Ed.) § 47.34; see also *First National Bank* v. *Missouri,* 263 U.S. 640, 657, 44 S. Ct. 213, 68 L. Ed. 486. No such contrary intent or reasonable understanding is affirmatively indicated here. Rather, the plain meaning of "a substantial number of employees" is pluralistic. A single employee can hardly be "a substantial number of employees" under § 7-471 (1) (A). Legislative intent is not to be found in what the legislature meant to say, but in the meaning of what it did say. *Hartford Electric Light Co.* v. *Water Resources Commission,* supra, 98. "It is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words." *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236.

A one-person unit is not an appropriate unit for collective bargaining under the MERA.[7] The town did not have the duty to bargain collectively with

---

[7] In its brief the board states that "this Court considered a case involving a one-employee unit but did not even view that fact as an issue. *Panicali* v. *Connecticut State Board of Labor Relations,* 147 Conn. 344 [160 A.2d 903]." The issue there was whether the individual involved had selected or designated the union as his bargaining representative, not whether a one-person unit was "appropriate." The board's "feeling," as stated in its brief, that it is "significant that the Court did not consider the fact that the Labor

the union under General Statutes § 7-469.[8] Accordingly, the town, having no duty to bargain collectively, did not violate the MERA by termination of the negotiations with the union for that reason.

The town claims error in the conclusion that it violated the MERA by eliminating the single paid position in the otherwise all volunteer fire department after the union sought to bargain on behalf of Sartirana, who was the incumbent in that position. The board concluded that the town had violated the MERA by eliminating the position of paid daytime driver. The Superior Court concluded that the board, under Connecticut statutes and decisions, could reasonably have found by substantial evidence that this was a violation of the MERA. We agree that the board was correct here.

Against the background of the facts found by the board recited above, the board also found certain other facts hereinafter set out which bring into proper context this assignment of error. These facts are: Over the years the chief of the fire department and fire officers became "somewhat dissatisfied" with Sartirana's performance and attitude

Board had found a one-employee unit appropriate, an issue to be discussed in the case"; id, 347; cannot be taken as any pronunciation in that case that a one-employee unit was appropriate. We were not called upon to review that "conclusion" of the board in that case. Id., 346. "An appellate opinion is authority only for what is decided. . . . The language of an opinion is given effect only with respect to the question actually decided." *State* v. *Darwin*, 161 Conn. 413, 421, 288 A.2d 422.

[8] "[General Statutes] Sec. 7-469. DUTY TO BARGAIN COLLECTIVELY. The municipal employer and such employee organization as has been designated as exclusive representative of employees in an appropriate unit, through appropriate officials or their representatives, shall have the duty to bargain collectively. This duty extends to the obligation to bargain collectively as set forth in subsection (c) of section 7-470."

and with the friction that developed between Sartirana and some volunteer firefighters. Because of this the chief suggested that Sartirana come to a meeting of the officers in October, 1974, to talk over the situation and straighten it out if possible. Sartirana was not told of the purpose of the meeting. Sartirana attended the meeting but became indignant when he learned of its purpose; he insisted upon the presence of a "representative" and walked out. The following day, after the chief and Sartirana talked, a "reasonably satisfactory understanding" was worked out and no further action was taken. Sartirana had joined the union early in 1974 and on March 18, 1974, the union had filed a representation petition with the board. After the board agent, the town manager and a representative of the union had conferred, the town manager signed an agreement recognizing the union and agreeing to negotiate with it for a unit consisting of the paid driver. Although negotiations between the town manager and the union began in February, 1975, the chief and his deputies did not know of Sartirana's joining the union or of the negotiations until May 5, 1975, when the town manager asked the chief to participate in the negotiations. In March and April, 1975, the chief and deputies prepared a proposed budget for the department for 1975-1976 and attended hearings on it before the town selectmen. This proposed budget contained an item for the salary of the paid driver and at no time during this process did anyone raise any question concerning the position of the paid driver. On May 12, 1975, the fire department officers held a meeting to discuss the possible elimination of the paid driver's position. What occurred at this meeting was summarized in a memorandum sent by the

officers to the selectmen. That memorandum stated that the position of daytime driver was no longer "economically feasible" due to the small number of alarms, that there was a sufficient number of men working in Winsted to cover as volunteer drivers if the position was eliminated, that the motion to eliminate the position of daytime driver had been passed unanimously and that a motion to transfer the daytime driver to another municipal position at his present salary had been passed unanimously. There was no satisfactory evidence that there had been any significant incident, or any new basis for dissatisfaction with Sartirana's performance, or any worsening of the town's fiscal condition between the time of the budget preparation and May 12, 1975. The only event which occurred during that time that would be likely to cause the officers' change of position was the discovery of Sartirana's union affiliation and the negotiations being conducted on his behalf. Thereafter, the selectmen adopted a budget for 1975-1976 which included the item for Sartirana's salary. At a meeting on May 15, 1975, the selectmen discussed the recommendation of the fire department and voted to take no action on it. The fire department officers were upset by the selectmen's failure to accept their recommendation and a meeting of the two groups was held on June 23. At this meeting, the fire department officers expressed dissatisfaction with the action of the selectmen and repeated their criticism of Sartirana's performance. Mention was also made of the negotiations with the union and statements that as volunteers they had no time to tend to such matters. Shortly before a selectmen's meeting scheduled for June 30, the chief and one of his deputy chiefs wrote letters of resignation

from their posts, and those letters were brought to the meeting by the chief's son and another deputy chief. At that meeting the deputy chief told the selectmen that the union was the reason for the resignations, that the union was the core of the problem and that the position had to go if Sartirana wanted a one-man union but that there would be "no problem if he stays, but not in the Union." At this meeting the selectmen voted to eliminate the paid driver's position. The selectmen were not persuaded to eliminate the position by the fire officers' arguments addressed to economy or to Sartirana's shortcomings but by opposition on the part of those officers to Sartirana's representation by the union.

General Statutes § 7-468 (a) articulates the basic legislative statement of employees' rights under the MERA. See footnote 3, supra. This section is essentially the same as that statement in 29 U.S.C. § 157 of the NLRA. See footnote 2, supra. Where the language of the acts is essentially the same, as we have already said, the "judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own acts." *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 579, 295 A.2d 526.

Under General Statutes § 31-109 (b) "[t]he findings of the board as to the facts, if supported by substantial evidence, shall be conclusive." "Substantial evidence is evidence that carries conviction. *Matter of Di Nardo* v. *Monaghan,* 282 App. Div. 5, 7, 121 N.Y.S.2d 119. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U.S. 197, 229,

59 S. Ct. 206, 83 L. Ed. 126. It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. *Purity Food Co.* v. *Connecticut State Board of Labor Relations,* 17 Conn. Sup. 199, 204; *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S. Ct. 501, 83 L. Ed. 660; *McCague* v. *New York C. & St. L. R. Co.,* 225 Ind. 83, 89, 71 N.E.2d 569; *Pennsylvania State Board* v. *Schireson,* 360 Pa. 129, 133, 61 A.2d 343." *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 461, 115 A.2d 439; see also *New Canaan* v. *Connecticut State Board of Labor Relations,* 160 Conn. 285, 289, 278 A.2d 761.

The board argues that to implement the rights given employees under § 7-468 (a), "municipal employers or their representatives are prohibited," under § 7-470 (a) (1), from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed in section 7-468." This language is similar to the parallel provision in the NLRA.[9] The board argues that terminating an employee for engaging in collective bargaining interferes, restrains and coerces employees in the exercise of their protected rights. This, of course, presented a factual issue and depends upon the circumstances of each case. *National Labor Relations Board* v.

[9] Title 29, U.S. Code, § 158 (a) (1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title" which guarantees to employees the right "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

*Hudson Transit Lines, Inc.*, 429 F.2d 1223, 1231 (3rd Cir.), cert. denied, 401 U.S. 911, 91 S. Ct. 876, 27 L. Ed. 2d 810.

Although we have determined that a one-member unit is not an appropriate unit under the MERA, that does not mean under the circumstances that Sartirana, who is an "employee" under § 7-467, is without any rights under the MERA. General Statutes § 7-468 (a) affirmatively sets out the rights of employees in the exercise of which they "shall be protected." See footnote 3, supra. Included is "the right of self-organization, to form, join or assist any employee organization, to bargain collectively . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." It can readily be seen from a comparison of the two statutes that § 7-468 (a) and 29 U.S.C. § 157; see footnote 2, supra; are "essentially the same." See *West Hartford Education Assn., Inc.* v. *DeCourcy*, supra.

The "right to self-organization, to form, join, or assist labor organizations" involves not a single right, but a number of rights. *National Labor Relations Board* v. *Burnup & Sims, Inc.*, 379 U.S. 21, 23, 85 S. Ct. 171, 13 L. Ed. 2d 1. This also is true of § 7-468 (a). The "self-organization" that Congress sought to protect under the NLRA was the "self-organization" of employees in dealing with their employer with regard to wages and working conditions. *National Labor Relations Board* v. *Sterling Electric Motors, Inc.*, 109 F.2d 194, 198 (9th Cir.). The right of self-organization is an "undisputed right." *Republic Aviation Corporation* v. *National Labor Relations Board*, 324 U.S. 793, 797, 65 S. Ct. 982, 89 L. Ed. 1372. "Employees have as clear a

right *to organize* and select their representatives for lawful purposes as the respondent [Jones & Laughlin Steel Corporation] has to organize its business and select its own officers." (Emphasis added.) *National Labor Relations Board* v. *Jones & Laughlin Steel Corporation*, 301 U.S. 1, 33, 57 S. Ct. 615, 81 L. Ed. 893.

Under the NLRA, guards are "employees" within the statutory definition of that term and they possess the same rights as nonguard employees. The only limitation as to guards is not on employee rights but rather on the power of the NLRB to certify bargaining units containing both guard and nonguard employees or containing only guards represented by or affiliated with the same union representing bargaining units containing nonguard employees of the same employer. *National Labor Relations Board* v. *Bel-Air Mart, Inc.*, 497 F.2d 322, 326 (4th Cir.). In the *Bel-Air Mart* case one James Pilachowski was employed as a uniformed guard at the employer's discount store where his duties entailed greeting customers, being on the lookout for shoplifters, making sure all doors were closed and locked at nighttime on closing, taking deposits to the bank and observing employees to prevent theft by them. He attended a union meeting and a few days later he and other guards and supervisory personnel were warned by the personnel manager that "they were 'considered management' and that they 'were to offer no opinion to the girls as to whether or not they [the clerks] should join [the union].'" Id., 323. After he attended another union meeting, he was discharged for "violating company policy." There was no question that Pilachowski was discharged solely for the reason that he attended the two union meetings. By attending the

union meeting Pilachowski was exercising rights reserved to him by the NLRA, despite the limitation on the type of bargaining unit he could join. Accordingly, in *Bel-Air Mart* the court (p. 326) struck down the argument "that Congress could not have intended that the word 'employee' mean one thing for purposes of determining a proper bargaining unit and something else in determining which employees are protected from being fired for union activity." Essentially, *Bel-Air Mart* declares, as pertinent to the case before us, that while the NLRA does not permit the certification of a disqualified union, that still does not deprive an "employee" affected by such disqualification of his rights under § 7 of the NLRA (29 U.S.C. § 157) but only certain rights under 29 U.S.C. § 159 (b) (3). Id., 327; see also *Rock-Hill-Uris, Inc.* v. *McLeod*, 236 F. Sup. 395 (S.D. N.Y.), aff'd, 344 F.2d 697 (2d Cir.). Sartirana, therefore, has rights under the MERA as an "employee" despite our conclusion that a one-member unit is not an appropriate unit. Under § 7-470 (a) (1) the town was proscribed from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed in section 7-468." Under that latter statute the exercise of the right of self-organization protects the activity of employees seeking "to form, join or assist any employee organization, to bargain collectively. . . ." It was for the exercise of such rights that Sartirana's position as daytime driver was eliminated.

It is true that the Connecticut State Labor Relations Act does not interfere with the normal exercise of an employer's right to discharge his employees, but the discharge must not amount to a subterfuge to circumvent the provisions of the act. *Biosogno* v. *State Board of Labor Relations*, 150

Conn. 597, 602, 192 A.2d 550. Certain employer conduct may be so "inherently destructive of employee interests" that it may be deemed proscribed without the need for proof of an underlying improper motive. *National Labor Relations Board* v. *Great Dane Trailers, Inc.,* 388 U.S. 26, 33, 87 S. Ct. 1792, 18 L. Ed. 2d 1027. No need for proof of an improper underlying motive is necessary where employer conduct carries with it such unavoidable consequences which the employer not only foresaw but which he must have intended and thus it bears "its own indicia of intent." Ibid. *Great Dane* points out that if the conduct in question falls within this " 'inherently destructive' category, the employer has the burden of explaining away, justifying or characterizing 'his actions as something different than they appear on their face,' and if he fails, 'an unfair labor practice charge is made out.' " Id., 33.

The United States Supreme Court has stated that even if the employer does come forward with counter explanations for his conduct in such a situation, the NLRB may "nevertheless draw an inference of improper motive from the conduct itself and exercise its duty to strike the proper balance between the asserted business justifications and the invasion of employee rights in the light of the [National Labor Relations] Act and its policy." *National Labor Relations Board* v. *Great Dane Trailers, Inc.,* supra, 33–34, citing *National Labor Relations Board* v. *Erie Resistor Corporation,* 373 U.S. 221, 229, 83 S. Ct. 1139, 10 L. Ed. 2d 308.

Our function on the issue of the propriety of the board's decision on the termination of the position of paid daytime driver is to determine whether the Superior Court was correct in concluding, as it did,

that there was substantial evidence to enable the board to conclude as it did. We agree that there was substantial evidence for such a conclusion. It should be noted that it is not the function of the court to pass upon the credibility of witnesses, weigh the evidence or reject reasonable board inferences simply because other inferences might also be drawn and we also recognize that the board's findings of fact must often depend on circumstantial as well as direct evidence. *Singer Co.* v. *National Labor Relations Board,* 429 F.2d 172, 179 (8th Cir.); see also *National Labor Relations Board* v. *Melrose Processing Co.,* 351 F.2d 693, 698 (8th Cir.).

The town's claim of error that it did not violate the law when its town manager withdrew from negotiations with reference to Sartirana because under the town charter the fire department was not under the town manager's supervision requires no discussion because the other assignments of error above are dispositive of the appeal. *Center Drive-In Theatre, Inc.* v. *Derby,* 166 Conn. 460, 461n, 352 A.2d 304; *Masti-Kure Products Co.* v. *Appel,* 161 Conn. 108, 111, 285 A.2d 346.

There is error, the judgment is set aside and the case is remanded with direction to render judgment as on file except that the plaintiff town of Winchester does not have to resume negotiations with the union.

In this opinion the other judges concurred.