[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 10205
 FACTS
The plaintiffs, Robert E. Balbi and Deborah P. Kingsley, parents of the minor plaintiff, Jonathan (J.R.) Balbi, instituted this action following a decision of the defendant, Ridgefield Board of Education.
The board voted to expel Jonathan Balbi, who was a sixteen year old student at Ridgefield High School during September and October, 1999.
The circumstances leading to the expulsion revolved around an incident which occurred on the grounds of Ridgefield High School on October 8, 1999, involving the plaintiff, Jonathan Balbi.
On October 12, 1999, a letter was sent from Dr. Joseph Ellis, principal of Ridgefield High School, to the plaintiff, Robert Balbi.
The letter (Exhibit 1) claimed that Jonathan Balbi had threatened a fellow student with a knife, and that expulsion proceedings would begin, pursuant to § 10-233d of the Connecticut General Statutes.
A more detailed letter (Exhibit 2) followed on October 13, 1999, which repeated the allegation that Jonathan Balbi had threatened another student with a knife.
The October 13 letter further explained that Jonathan Balbi had "introduced a deadly weapon or dangerous instrument" onto the school grounds.
The letter further informed the parent that a hearing would be held on October 20, 1999, beginning at 6:30 p.m., and that the parents of Jonathan Balbi had a right to be present and to be represented by an attorney.
At the October 20, 1999 hearing, Robert Balbi appeared and requested a continuance for the purpose of obtaining an attorney to represent his son in the expulsion hearing.
The defendant, Ridgefield Board of Education, voted to continue the hearing until October 28, 1999.
A special board meeting was held on October 28, 1999, pursuant to § 10-233d (2)[1] of the General Statutes, to consider the expulsion of Jonathan Balbi. CT Page 10206
Robert Balbi appeared with counsel and requested a second continuance in order to properly prepare for the hearing (Transcript, p. 7).
Although the attorney for the Ridgefield Board of Education took no position concerning the request, the board voted to deny the request for a postponement and to proceed with the expulsion hearing.
Testimony was received from Sergeant Daniel Ryan of the Ridgefield Police Department.
Sergeant Ryan testified that he was dispatched to Ridgefield High School on the date of the incident, having been informed that J.R. Balbi, a sixteen year old student, was in possession of a knife.
Upon arrival at the school, Sergeant Ryan testified that he talked to several individuals, including the minor plaintiff, J.R. Balbi.
He testified that during their conversation, J.R. Balbi reached into his boot, produced a knife, and handed the knife to Sergeant Ryan.
Over the objection of the plaintiffs attorney, Sergeant Ryan was permitted to testify concerning conversations which he conducted with various students
The officer testified that one student related that J.R. Balbi, while holding a knife, asked him for money, and told him to empty his pockets.
Another witness placed a knife in the hands of J.R. Balbi.
Sergeant Ryan refused to identify either the alleged victim or any witness to the incident by name.
Although he took statements from the individuals as part of his investigation, he also refused to disclose copies of written statements, or to confirm or deny the identity of the witnesses.
When shown the knife which had been taken from J.R. Balbi, Sergeant Ryan identified it as a "gravity knife," a knife which opens with the flick of the wrist, and is a "deadly weapon," pursuant to § 53a-3
(6)[2] of the General Statutes.
At the close of the hearing, a motion for an adjournment of the hearing was made by the attorney for the plaintiffs, in order to secure additional information, and the presence of witnesses.
On November 1, 1999, Jonathan (J.R.) Balbi, by vote of the defendant, CT Page 10207 Ridgefield Board of Education, was expelled from the Ridgefield Public Schools for a period of one year.
The board further voted not to provide alternative education for J.R. Balbi, pursuant to § 10-233d (e)[3] of the General Statutes.
The board made six specific findings of fact:
1. On October 8, 1999, Jonathan R. Balbi was a 16 year old student at Ridgefield High School.
2. On that date, Jonathan was not identified as a child requiring special education and related services.
3. On that date, Jonathan was in possession of a gravity knife on the grounds of Ridgefield High School.
4. The gravity knife is a deadly weapon and dangerous instrument as defined by Connecticut General Statutes § 53a-3.
5. A summary of Jonathan's discipline record while at Ridgefield High School is attached hereto and incorporated herein.
6. The actions of Jonathan R. Balbi on October 8, 1999 as described above are in violation of the Ridgefield School Board Policy P 5520 C1 and C10 and § 10-233d of the Connecticut General Statutes.
The provisions of the Ridgefield School Board Policy cited in Finding 6, prohibit conduct (1) causing a threat of injury to students, staff or others; and (2) possession or transmission of any firearm, deadly weapon, dangerous instrument or martial arts weapon or destructive device.
The board also voted to deny the request for a continuance made at the beginning of the October 28, 1999 hearing, as well as the request for an adjournment made at the close of the expulsion hearing.
The plaintiffs have brought this action by way of appeal, claiming (1) the Ridgefield Board of Education cannot expel a child requiring special education and related services, without convening a planning and placement team (PPT); (2) the plaintiffs were denied the right to discovery of certain materials prior to the hearing; (3) the notification prior to the hearing was improper; and (4) § 10-233d is unconstitutional, and is void for vagueness, as applied to the facts of this case. CT Page 10208
 STANDARD OF REVIEW
In an appeal of a decision of an administrative agency, a court is charged with reviewing the record of the proceedings before the agency, to determine whether the board acted arbitrarily, unreasonably or contrary to law. Hotchkiss Grove Assn., Inc. v. Water ResourcesCommission, 161 Conn. 50, 56 (1971). The court does not try the case denovo, or adjudicate the facts. Norwich v. Norwich Fire Fighters,173 Conn. 210, 214 (1977).
In functioning pursuant to § 10-233d of the Connecticut General Statutes, the Ridgefield Board of Education acts in a quasi-judicial capacity. Mitchell v. King, 169 Conn. 140, 146 (1975).
In reaching a decision, the board is charged with weighing the evidence, in order to reach a conclusion. Determination of issues of fact, and the credibility of the witnesses, are for the board to determine. Conley v. Board of Education, 143 Conn. 488, 492 (1956).
If the findings of the board are supported by substantial evidence, they cannot be disturbed. Pet v. Department of Health Services,228 Conn. 651, 667 (1994).
Substantial evidence is such evidence as a reasonable mind might accept, to support a conclusion. Winchester v. Connecticut State Board ofLabor Relations, 175 Conn. 349, 365 (1978). The standard is satisfied, if the record provides a substantial basis of fact, from which the fact in issue may be inferred. Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 539-41 (1987).
The possibility of drawing two inconsistent conclusions from the evidence, does not prevent an agency's findings from being supported by substantial evidence. Samperi v. Inland Wetlands Agency, 226 Conn. 579,588 (1993).
 PROCEDURAL POSTURE OF THE CASE
Although not raised by way of a motion to dismiss by any of the defendants, it must be noted that this matter comes to court by way of an appeal from the administrative agency's decision.
Local boards of education, pursuant to § 4-166 (1)[4] of the Connecticut General Statutes, are specifically exempted from the definition of "agency" under the Administrative Procedure Act.
Although expulsion hearings are governed by procedural protections CT Page 10209 contained in the Uniform Administrative Procedure Act, pursuant to §10-233d (3),[5] the right of appeal has not been included within the section of the statutes governing expulsion.
Appeals from the decision of an administrative agency may be taken only when a statute provides for that judicial intervention. Delagorges v.Board of Education, 176 Conn. 630, 633 (1979). Boards of Education are not subject to the provisions of the Uniform Administrative Procedure Act. Neyland v. Board of Education, 195 Conn. 174, 177-79 (1985); Lee v.Board of Education, 181 Conn. 69, 74-76 (1980).
Section 10-233d (3) includes only those provisions of the Administrative Procedure Act dealing with the conduct of hearings, not those providing for a right of appeal.
However, this trap for the unwary has not prevented courts from exercising jurisdiction in cases where a plaintiff challenges the procedures utilized to expel a student as being violative of due process guarantees and protections. Packer v. Board of Education, 246 Conn. 89,94-95 (1998).
A student facing expulsion has a constitutionally protected property interest in his continuing participating in a high school education program. Packer v. Board of Education, supra, 105.
In their prayer for relief, in addition to requesting that their appeal be sustained, the plaintiffs have sought affirmative relief, in the nature of a mandatory injunction.
Having elected to combine a request for injunctive relief with an administrative appeal, the plaintiffs have invoked the minor plaintiff's fundamental right to a free public education, by way of the pleadings.Horton v. Meskill, 172 Conn. 615, 645 (1977); Conn. Const. Article VIII, § 1. They have also claimed denial of state and federal due process protections. Bartholomew v. Hamden Board of Education, 1994 WL 580964 (Conn.Sup.) (Dorsey, J.).
Therefore, unlike Petty v. Wallingford, 1994 WL 422631 (Conn.Sup.) (Hodson, J.), grounds for jurisdiction other than the Administrative Procedure Act have been raised, and not attacked by way of a motion to dismiss.
Therefore, the court will address the merits of the plaintiffs' claims, notwithstanding any procedural deficiencies which may exist.
 PLAINTIFFS RECEIVED ADEQUATE NOTICE OF HEARING
CT Page 10210
The letters of October 12, 1999 and October 13, 1999, provided sufficient notice to the plaintiffs of the nature of the expulsion proceedings, and the allegations of misconduct concerning J.R. Balbi.
Section 4-177 of the General Statutes, which is applicable to these proceedings pursuant to § 10-233d (3) of the Connecticut General Statutes, set out four requirements concerning written notice: (1) a statement of the time, place and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; and (4) a short and plain statement of the matters asserted.
The defendant, Ridgefield Board of Education, complied with all applicable notice requirements.
The letters notified the plaintiffs of the time and place of the hearing, and the conduct which was the subject of the hearing.
They included the right to be represented by an attorney, and specific mention was made of the alleged use and possession of a knife by J.R. Balbi.
Furthermore, the board granted an initial request for a continuance by the plaintiff, Robert Balbi.
The refusal to grant a second continuance at the request of counsel, was not an abuse of discretion. Ridgeway v. Ridgeway, 180 Conn. 533, 538
(1980).
Therefore, the plaintiffs claim of inadequate notice is not supported by the record and must fail.
 THE BOARD CANNOT BASE ITS DECISION ON THE HEARSAY TESTIMONY OF SGT. DANIEL RYAN
Ridgefield Police Sergeant Daniel Ryan testified concerning statements made to him by the alleged victim and a witness.
Faced with cross-examination, he refused to reveal the identity of those persons, or provide copies of written statements taken by him, or by other Ridgefield police officers.
Although an administrative tribunal is not strictly bound by the rules of evidence which apply in civil trials, evidence must be reliable and CT Page 10211 probative. Jutkowitz v. Department of Health Services, 220 Conn. 86, 108
(1991); Lawrence v. Kozlowski, 171 Conn. 705, 710 (1976).
Although there is no specific prohibition against the receipt of hearsay evidence in the Administrative Procedure Act, the agency must make an initial determination to receive evidence, and to exclude evidence which is irrelevant, immaterial, or repetitious. Tomlin v.Personnel Appeal Board, 177 Conn. 344, 348 (1979).
In order to be admissible, hearsay evidence must first be determined to be reliable and probative. Adriani v. Commission on Human Rights Opportunities, 220 Conn. 307, 319 n. 11 (1991); Jutkowitz v. Department ofHealth Services, supra, 108.
Here, counsel for the defendants admitted, at trial, that hearsay testimony of Sgt. Ryan was lacking in any indicia of reliability.
His refusal to identify the witnesses or the victim, or to provide copies of statements, even in redacted form, rendered any attempt at meaningful cross-examination futile.
Therefore, to the extent that the findings reached by the Ridgefield Board of Education are dependent upon conversations related by Sgt. Ryan with the alleged victim and a witness, they cannot be sustained.
It follows, that any conclusions supported exclusively by Sgt. Ryan's hearsay testimony must be disregarded.
This would include the finding that J.R. Balbi possessed a "dangerous instrument," defined in § 53a-3 (7) as:
 [A]ny instrument . . . which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury. . . .
To make a finding that the gravity knife was a "dangerous instrument," the board was compelled to credit the hearsay testimony of Sgt. Ryan.
Therefore, that portion of the board's fourth finding, relating to a "dangerous instrument," cannot be sustained.
However, the board was justified, based on the evidence, in concluding that J.R. Balbi possessed a "deadly weapon," as defined by the applicable section of the General Statutes. CT Page 10212
The uncontradicted testimony at the hearing was that Sgt. Ryan was handed a knife by J.R. Balbi, which he identified as a "gravity knife."
The knife was produced at the hearing.
The board therefore could find that J.R. Balbi possessed a "gravity knife," defined as a "deadly weapon" in § 53a-3 (6) of the Connecticut General Statutes.
Furthermore, possessing a "deadly weapon" on school grounds constitutes conduct which caused a threat of injury to school staff or others, in violation of § P 5520 C1 of the board's policy.
There is no merit to the plaintiffs' position that the definition of a "gravity knife," was void for vagueness.
The nature and operation of the knife was explained by Sgt. Ryan at the hearing.
There is no requirement, either in the board's policy or in the General Statutes, that the minor plaintiff have actual knowledge that he was in possession of a "gravity knife."
The General Assembly has chosen to classify the implement as a "deadly weapon."
The board's fourth finding, therefore, as it concerns possession of a "deadly weapon," is supported by substantial evidence in the record.
 THE BOARD'S FINDING THAT JONATHAN R. BALBI WAS NOT A CHILI REQUIRING SPECIAL EDUCATION AND RELATED SERVICES IS CONTRARY TO THE RECORD AND THE LAW
In order to sustain the decision to expel J.R. Balbi from Ridgefield High School, the defendant, Board of Education, must be justified in concluding that J.R. Balbi is not a child requiring special education or related services.
This is a critical finding, in light of § 10-233d (i) of the General Statutes, which reads:
Prior to conducting an expulsion hearing for a child requiring special education and related services . . . a planning and placement team shall convene to determine whether the misconduct was caused by the child's disability. If it is determined that the CT Page 10213 misconduct was caused by the child's disability, the child shall not be expelled.
The plaintiffs argue that the minor, J.R. Balbi, is a child requiring special education and related serves, and has been since the fourth grade.
Four days prior to the incident which was the subject of the expulsion hearing, a Planning and Placement Team (PPT) had been convened to evaluate J.R. Balbi's need for special education and related services.
Testimony at the hearing revealed that J.R. Balbi's long history of being identified as a child requiring special education, involved emotional problems, as well as difficulty with reading and writing (Transcript, p. 96).
The plaintiff, Deborah Kingsley, stated that she assumed her son was a special education student during the 1999-2000 school, because he always had been (Transcript, p. 101).
J.R. Balbi's history includes emotional problems, which had been treated outside the school setting, including a stay at Deveroux School, as a result of self-destructive behavior (Transcript, p. 103).
The plaintiff, Robert Balbi, participated in the October 4, 1999 PPT, which was not attended by J.R. Balbi, because he was under school suspension at that time.
The record reveals that J.R. Balbi was identified as a student requiring special education throughout his experience in the Ridgefield school system (Transcript, p. 81).
It was explained to Robert Balbi that his son was not in a special education program in the fall of 1999, and that he "fell through the cracks" at that time.
On October 4, he requested that his son be tested for the purpose of determining his need for special education or related services.
This request was honored (Transcript, p. 87).
Dr. Joseph Ellis, the principal of Ridgefield High School, confirmed that at the October 4, 1999 PPT, psychological and educational testing was authorized to determine eligibility for special education (Transcript, p. 77). CT Page 10214
He stated that J.R. Balbi was not a special education student for the year beginning September, 1999 (Transcript, pp. 76-77), but acknowledged that he had been a special education student at Ridgefield High School between October 9, 1997 and April 28, 1999 when he withdrew from school (Transcript, p. 117).
The testimony of Dr. Ralph Wallace, the Ridgefield Superintendent of Schools, related a conversation with Dr. Michael Mendelson, a school official present at the October 4 PPT meeting.
Dr. Mendelson had informed the superintendent that in October 8, 1999, J.R. Balbi had not been designated as a student in need of special education.
The record unambiguously demonstrated that for the two academic years preceding 1999-2000, J.R. Balbi had been identified as a student in need of special education or related services.
There is no evidence that a PPT was ever convened for the purpose of changing the status or the classification enjoyed by J.R. Balbi between October of 1997 and April of 1999.
The only PPT was held on October 4, 1999, four days prior to the incident which was the subject of the expulsion hearing.
J.R. Balbi's student record (Exhibit 5) includes a continuation of discipline and behavioral problems in the fall of 1999.
The student record provides no reason to believe that any change of circumstances had occurred since the time J.R. Balbi was classified as a student in need of special education and related services between 1997 and April of 1999.
On the contrary, the record (Exhibit 5) reveals three specific instances of misconduct prior to the incident of October 8, 1999, during the 1999 academic year.
Connecticut Agency Regulation 10-76d-7 requires of a board of education that:
 Provision shall be made for the prompt referral to a planning and placement team of all children who have been suspended repeatedly, or whose behavior, attendance or progress in school is considered unsatisfactory, or at a marginal level of acceptance.
CT Page 10215 J.R. Balbi's conduct during the fall of 1999, coupled with his history of requiring special education services, seem more than sufficient to invoke the provision of appropriate regulation.
Furthermore, although testimony from the superintendent of schools and the principal of Ridgefield High School was received at the hearing, the individual most familiar with the student's specialized needs, Dr. Mendelson, did not testify in person or through documentary evidence at the one night hearing.
The overriding goal of statutes and regulations, state and federal, concerning special education, is to guarantee each child with a disability a free appropriate public education. United School District #1v. Department of Education, 45 Conn. Sup. 57, 66-67 (1997).
Section 10-76h (a)(1) of the Connecticut General Statutes allows for a hearing, when a school district proposes to change the classification of a special education student:
 A parent or guardian of a child requiring special education and related services . . . may request, in writing, a hearing of the local or regional board of education . . . whenever such board or district proposes or refuses to . . . change the identification, evaluation or educational placement of . . . such child. . . .
The record shown no affirmative effort of the Ridgefield Board of Education to change J.R. Balbi's April, 1999 classification as a child requiring special education or related services.
It is not a valid or appropriate response for the Ridgefield Board of Education to claim that the student put himself back in the general population at the beginning of the 1999-2000 academic year, or that he "fell through the cracks."
In making its finding that on October 8, 1999, Jonathan R. Balbi was not a child requiring special education or related services, the board seeks to gain advantage from the fact that school officials permitted J.R. Balbi to fall "through the cracks" in September and October of 1999.
It further seeks to justify the expulsion, because school officials did not take the initiative to promptly refer J.R. Balbi to a PPT, in light of repeated misconduct at the beginning of the 1999 school year. CT Page 10216
No member of the October 4 PPT, other than the plaintiff, Robert Balbi, testified at the expulsion hearing, and the defendants offered no testimony in an effort to substantiate that the previous classification of J.R. Balbi was no longer valid.
The record, therefore, fails to support the finding by the Ridgefield Board of Education that Jonathan (J.R.) Balbi was not a child requiring special education and related services on October 8, 1999.
The Ridgefield Board of Education, therefore, should not have proceeded with the expulsion hearing, in the absence of a PPT being convened, pursuant to § 10-233d (i) of the General Statutes.
 CONCLUSION
Because the defendant, Ridgefield Board of Education, was required to find that the minor sixteen year old plaintiff, J.R. Balbi, was not a child requiring special education and related services in October of 1999, it should not have proceeded with the expulsion hearing on October 28, 1999.
The necessary finding cannot be made, based upon the record generated before the board.
The appropriate procedure would have been to refer the matter to a PPT, to determine whether the misconduct was caused by the plaintiff, J.R. Balbi's disability, and to determine whether the special education status which he enjoyed in the spring of 1999 remained valid.
The appeal of the plaintiffs is therefore sustained, and the finding of the defendant, Ridgefield Board of Education, that the plaintiff, Jonathan R. Balbi, should be expelled from Ridgefield High School is ordered expunged from his record.
It is further ordered that a PPT determine whether the alleged misconduct of October 8, 2000 was caused by any disability of J.R. Balbi.
It is further ordered that Jonathan R. Balbi shall be provided the special education and related services to which he had been found entitled in April of 1999, pending further proceedings.
Radcliffe, J.